UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| RONNIE FIRE CLOUD,<br><br>　　　　　Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | 1:16-CV-01024-CBK<br><br>ORDER |

　　　　Petitioner was convicted of abusive sexual contact and attempted aggravated sexual abuse and was sentenced to 120 months imprisonment. He appealed and the United States Court of Appeals for the Eighth Circuit affirmed. United States v. Fire Cloud, 780 F.3d 877 (8th Cir. 2015). He filed a timely motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

　　　　Petitioner contends that he received ineffective assistance of counsel at trial, sentencing, and on appeal. To support a claim of ineffective assistance of counsel, a two-prong test must be met. "To succeed on this claim, [petitioner] must show ineffective assistance--that counsel's representation fell below an objective standard of reasonableness." Wilcox v. Hopkins, 249 F.3d 720, 722 (8th Cir. 2001) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Petitioner "must also prove prejudice by demonstrating that absent counsel's errors there is a reasonable probability that the result of the proceeding would have been different." Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998), (citing Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d (1984)). The burden of establishing ineffective assistance of counsel is on the petitioner. Delgado v. United States, 162 F.3d at 982. Petitioner "'faces a heavy burden' to establish ineffective assistance of counsel pursuant to section 2255." DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000) (quoting United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the

benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8, 124 S. Ct. 1, 6, 157 L. Ed. 2d 1 (2003).

**I. Transcripts.**

Petitioner makes outlandish allegations that the trial transcript was edited and redacted. For example, he claims the trial transcript did not contain exchanges that occurred in court during the trial, including his claim that I admonished the victim more than once to quit lying, that I stated that there was no evidence to convict the petitioner, and that I stated that I intended to sentence him to time served if convicted. On the contrary, at sentencing I stated that the victim was very credible and obviously the jury found her credible. I stated that clearly the evidence was sufficient to convict on both counts and the Eighth Circuit agreed. He claims the trial transcript is inaccurate in many other respects. All such claims are false.

Petitioner also contends that the transcript of the sentencing hearing is inaccurate. He contends that the prosecutor attempted to introduce a letter written by petitioner at sentencing but that I declined, saying that I knew what it says. That is false. Petitioner goes into detail of alleged statements made by the prosecution, defense counsel, and me at his sentencing hearing discussing what the sentence should be. Petitioner contends that I said at sentencing that "the most [I] could give the defendant was six months time served under simple assault because there was no physical, medical or forensic evidence" whereupon trial counsel "volunteered that Fire Cloud be given a ten-year prison sentence." Petitioner's account is entirely fictional.

Pursuant to 28 U.S.C. § 753(b), "[t]he transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had." I presided over the trial and sentencing hearing and can confirm that the transcript is accurate. Petitioner's inherently incredible claims as to the accuracy of the transcripts lack any merit and do not warrant a hearing. Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998).

## II. Ineffective Assistance Prior to Trial.

Petitioner contends that counsel was ineffective in failing to investigate his claimed alibi witnesses. The Eighth Circuit has "stated that failing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel." Kramer v. Kemna, 21 F.3d 305, 309 (8th Cir. 1994). Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir. 1990) (*quoting* Strickland v. Washington, 466 U.S. at 691, 104 S.Ct. at 2066).

The victim claimed that she and her boyfriend were at the petitioner's home on the evening of November 1, 2010. She claimed that petitioner invited them to spend the night and that they went to sleep at petitioner's home in the early morning hours of November 2, 2010. She claimed that she and her boyfriend woke up the next morning and her boyfriend left. She stayed and took a shower. She claimed that, while she was in the shower, petitioner sexually assaulted her.

Petitioner contends counsel was ineffective in failing to investigate petitioner's alibi defense that he was at work at the Standing Rock Housing Authority beginning at 8:00 a.m. on the morning of November 2, 2010, and that he was at lunch with friends during the noon lunch hour. Petitioner has identified the witness that he contends should have been interviewed and what evidence should or could have been discovered, as required. He contends that counsel should have interviewed Lona Medicine Crow, Pat Hawk, William Lawrence Sr., Thomas Long Feather, John Gougles from the Housing Authority, his tribal Probation Officer who monitored petitioner's court-ordered community service at the Housing Authority, and Milton Uses Arrow, Barbara Mousseau, Rufus Reeds, Sr., and Charley Chapman, whom he claims would have verified that he was at lunch with them on the day in question, and the victim's boyfriend, M.J. Archambault, who would testify that he and the victim did not spend the night in question at petitioner's residence.

3

In addition to identifying what witnesses should have been interviewed, petitioner is required to produce an affidavit from any witness that he contends should have been interviewed, or to make some other substantial showing as to what the witness would have allegedly said had the witness been interviewed or called to testify. *See* Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989). Petitioner is further required to show that counsel was informed of the existence of any witnesses not called to testify.

Petitioner has set forth in detail that each of the witnesses he has set forth could have testified that he was either at work on the day of the offense or that when he was not at work, he was with others having lunch and dinner. He claims that community service records from the Standing Rock Housing Authority would corroborate such testimony. Petitioner further set forth in detail that he told counsel how to contact each of the proffered witnesses.

Petitioner submitted statements, ostensibly signed by Milton Uses Arrow and Barbara Mousseau, that they had lunch and dinner with petitioner on November 1, 2010, the day before the assault. He also submitted statements, ostensibly signed by Rufus Reeds, Sr. and Charley Chapman, that petitioner "came by on his lunch break on November 2, 2010," and that Rufas Reeds, Sr. gave petitioner a ride "back to work" on November 2, 2010. These statements are not specific as to time of day nor are they notorized. Petitioner did not submit the work records he claims would show that he was at work from 8:00 a.m. to noon and 1:00 to 5:00 p.m. on the date of the offense. I realize that he is in prison but he sets forth no explanation as to why one of his friends could not obtain the records.

Counsel originally did not set forth in his affidavit any response to the petitioner's claim that alibi witnesses were identified to counsel prior to trial. Counsel submitted a supplemental response wherein he states that "the bulk of the investigation" was completed by defendant's prior counsel. The attorney's worksheet submitted in support of her CJA voucher belies that claim. Counsel states in the supplemental response that he was aware of the claimed alibi witnesses but he did not interview them because the "proposed alibi defense did not span the time that the victim alleged that the crime

4

occurred." Of course, at trial it became apparent that the victim had made conflicting statements as to the claimed time of the offense.

Whether or not a hearing is necessary in this case to resolve petitioner's claim that counsel was ineffective in failing to investigate an alibi defense depends upon whether witness affidavits or other documentation exist to support petitioner's claim. Counsel would normally be appointed to investigate petitioner's ineffective assistance claim in this regard. I decline to do so in this case because of the multitude of false claims made by petitioner. I have not previously seen such obvious lies anywhere close to what exist here. Petitioner has zero credibility as to all these matters. His allegations cannot be accepted as presenting a factual dispute because they are contradicted by the record and are inherently incredible.

### III. Ineffective Assistance at Trial.

#### A. Failure to put on a defense.

Petitioner contends that counsel was ineffective in failing to call petitioner as a witness in his own defense and in failing to present his alibi witnesses in his defense. He claims that he was threatened and prevented from testifying. In response, trial counsel submitted the transcript of a conference between counsel and petitioner wherein petitioner agreed that he did not wish to testify or present evidence on his own behalf. Petitioner contends that the transcript is not an accurate recording of what transpired during that conference and that the transcript was obtained by subterfuge to make it falsely appear that petitioner waived his right to testify. He contends that the transcript "was patched together by the clerk who typed from a document she was presented by Sutton." Petitioner contends that he thought the transcript was being created "to protect him from the judge 'giving him life in prison' as Sutton had indicated he would do if Fire Cloud testified." Petitioner contends that, after the colloquy between himself and counsel concluded, "Fire Cloud still believed he was going to be testifying at his trial." Petitioner insists that the exchange between he and his attorney as set forth by the transcript "never occurred as transcribed." Petitioner contends that he understood that invoking his Fifth Amendment right "was intended to protect him from the judge asking him a lot of

5

questions and giving him life in prison when he did not testify." Petitioner contends that counsel did not explain that waiving his Fifth Amendment right meant that petitioner would not be testifying at all. All of petitioner's foregoing claims are contradicted by the record. His claims regarding the transcript of the discussion with counsel as to waiving the right to testify are all inaccurate and are rejected.

Petitioner is entitled to no credence. He has put forth a total pack of lies.

The Sixth Amendment grants a criminal defendant the right to call witnesses in his favor and to testify in his own defense. Rock v. Arkansas, 483 U.S. 44, 52, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987). "Only the defendant may waive [his] right to testify, and the waiver must be made voluntarily and knowingly." Berkovitz v. Minnesota, 505 F.3d 827, 828 (8th Cir. 2007).

As early as voir dire, defense counsel raised the issue of the possibility that the defendant would not testify. He elicited from the jury panel that there may be valid reasons, including the inability to effectively communicate, that would deter a person from testifying in his own defense even if the defendant asserts his innocence.

The transcript shows that petitioner fully understood the he had the right to testify in his own behalf and that he made the final decision not to take the stand. This decision was made for tactical reasons – petitioner and counsel believed that the government had failed to prove its case beyond a reasonable doubt.

Further, petitioner's knowing and voluntary waiver of the right was evidenced by silence when his counsel told the court, outside the presence of the jury, that petitioner made the decision to not present any evidence, other than what was presented through cross examination. Petitioner further did not object when counsel subsequently rested in front of the jury without calling petitioner to testify. Frey v. Schuetzle, 151 F.3d 893, 898 (8th Cir. 1998). A criminal defendant "must act affirmatively" in objecting when counsel rests without calling the defendant to the stand. United States v. Bernloehr, 833 F.2d 749, 752 (8th Cir. 1987). "The defendant may not . . . indicate at trial his apparent acquiescence in his counsel's advice that he not testify, and then later claim that his will to testify was 'overcome.'" *Id.*

6

Petitioner contends that he was coerced into waiving his right to testify by counsel, who advised him that the Judge would likely sentence petitioner to life in prison if petitioner testified. One of the risks of testifying is that, if convicted, the sentencing range could be enhanced based upon a finding that the defendant's testimony was false and that he obstructed justice. There is therefore a risk that a defendant who testifies could get a longer sentence if convicted.

The record is clear that counsel discussed with petitioner his right to testify and petitioner waived that right. He was not denied the right to testify in his own defense. He was not denied the effective assistance of counsel in this regard.

Counsel subpoenaed Barbara Mosseau, defendant's common law wife, along with family members Charles Chapman and Milton Uses The Arrow, to testify at trial. Counsel submitted a witness list which included the foregoing witnesses. They were not called as defendant elected not to put on a defense.

It was a reasonable trial strategy to refrain from putting on any evidence and instead arguing to the jury that the victim was not credible and the government's case was so weak that the defendant need not refute the evidence. The fact that the jury did find the victim credible, despite evidence to the contrary, does not impugn the reasonableness of the trial strategy selected by counsel and the defendant.

Petitioner knew that counsel intended to rest without putting on evidence prior to his attorney formally resting in front of the jury. Petitioner raised no objection to the failure to do so. Petitioner had the opportunity to raise his objections to me prior to counsel resting, after counsel formally rested and the jury was excused for the evening, and during the jury instruction settlement conference the following morning. Petitioner did not indicate in any way that he disagreed with counsel and wanted to call witnesses in his defense. Petitioner waived any right to present a defense, other than that presented through cross-examination of the government's witnesses.

**B. Failure to object to jury instructions.**

Petitioner contends that counsel was ineffective in failing to object to the giving of lesser included offense instructions to the jury. Petitioner contends that such instructions

7

told the jury to presume guilt and to deliberate only over the degree of guilt. Petitioner asserts that he told counsel he wanted to "roll the dice."

At the end of the first day of trial, I inquired, outside the presence of the jury, whether the defense wanted an instruction on a lesser included offense. Counsel stated, in the presence of the defendant, that he would like a lesser-included offense instruction. There was a discussion as to what were the lesser included offenses to the crimes of aggravated sexual abuse by force and attempted aggravated sexual abuse. The Court took an evening recess and jury instructions were settled in the morning.

Defendant was present the following morning when jury instructions were settled in chambers. Counsel stated "Judge, I had an opportunity to consult with my client last night, and my client has instructed me to request less-included offenses for both Counts I and II." Defendant did not contradict or raise any objection to his counsel's statement. At that time, defendant was seated around a conference table within feet of me. He did not indicate in any manner that he was not in agreement with his attorney's statement.

It is the District Court Judge's right and duty to instruct the jury on the law based upon the evidence presented. United States v. Stegmeier, 701 F.3d 574, 582 (8th Cir. 2012). The ultimate decision as to what instruction should be given to the jury is the sole responsibility of the Court. I have previously held that the district court may give a lesser included offense instruction *sua sponte*. United States v. Gregg, 376 F.Supp.2d 949, 954 (D.S.D. 2005).

Petitioner cannot demonstrate that counsel was ineffective in requesting lesser included offense instructions because he cannot show that he objected to such instructions at the time of trial. Further, petitioner cannot demonstrate prejudice. The Court twice (both on the evening of the first day of trial and the following morning) invited counsel to review and discuss which offenses were in fact lesser offenses of the crimes charged. The Court clearly intended to instruct the jury on lesser included offenses based upon the evidence presented at trial and the petitioner knew that.

**C. Failure to attack victim's credibility.**

8

Petitioner contends that counsel did not adequately attack the truthfulness of the victim. That is not true. There were no witnesses to the sexual assault and there was no forensic evidence that a sexual assault had occurred. This case presented the classic "he said/she said" situation. The victim's credibility was in contention at the start of the trial. In his opening statement, counsel for defendant told the jury that the evidence would show that the victim made contradictory statements about what happened on the date of the alleged offense. Counsel thoroughly cross-examined the victim, attempting to illicit inconsistencies in her testimony.

On direct examination, the victim testified that she and her boyfriend, M.J. Archambault, were at the defendant's home drinking with others. She testified, however, that she did not have any alcohol, other than a sip of M.J.'s drink. On cross examination she denied telling Wendy Bredow, the investigating officer, on the day after the offense that she had approximately five "drinks" that evening. Bredow testified on cross examination that that the victim did state that she had five or six drinks that evening with her friends at Cattlemen's and one at defendant's home.

Counsel further asked the victim where in McLaughlin, South Dakota, she met up with M.J. that evening prior to going to the defendant's home. She testified that they met at a gas station. She denied that she told Wendy Bredow that they met at Indian Health Services. Wendy Bredow testified on cross-examination that the victim stated on the day after the offense that she met M.J. at Indian Health Services.

The victim testified that she woke up about 8:00 or 9:00 in the morning. M.J. left to get food. An hour later she took a shower and the offense occurred. She admitted on cross-examination that she told F.B.I. Agent Miller that M.J. left at 11:00 for a job and the offense occurred around noon. She admitted on cross-examination that she told B.I.A. Agent Lawrence that the offense occurred at 1:00 p.m.

On cross-examination, counsel elicited evidence that the victim told different stories about the actual offense conduct at different times, that she told different stories about the time of the offense, that she told different stories about whether she drank that evening, and even about trivial matters that occurred that evening and the following

9

morning. Counsel's cross-examination highlighting the victim's inconsistent stories called into question her credibility and was a reasonable trial strategy.

Counsel argued to the jury during closing argument that the victim was not credible, pointing out all the inconsistencies in her story. Counsel was not ineffective as contended by petitioner.

### IV. Ineffective Assistance at Sentencing.

Petitioner contends that counsel was ineffective at sentencing by insisting that the petitioner receive a ten year sentence when petitioner was entitled to a six month sentence for simple assault.

Petitioner was convicted in Count I of the lesser included offense of abusive sexual contact, which has a statutory maximum custody sentence of ten years (120 months), and in Count II of attempted aggravated sexual abuse, which has a statutory maximum custody sentence of life. The Guideline range was 151 to 188 months. The Federal Sentencing Guidelines are advisory only. I had the statutory authority to impose the maximum sentence on each count of conviction. The prosecutor asked for a sentence in the middle of the guideline range. In response, counsel for petitioner argued that the behavior in Count I accounted for the actual conduct found by the jury and a sentence of 120 months was sufficient to account for such conduct. That was certainly effective advocacy on behalf of petitioner since 120 months was a lower sentence than called for by the advisory guideline range.

I sentenced petitioner to 120 months on Count I and 120 months on Count II, to be served concurrently. In essence, petitioner was sentenced to a total sentence of 120 months which was well below the advisory guideline range. Counsel for petitioner successfully advocated for a sentence which was less than what the government and the sentencing guidelines suggested should be imposed. Absent effective advocacy by counsel, petitioner would have received a sentence in excess of 120 months. He cannot demonstrate that counsel was ineffective at sentencing or that he was prejudiced by counsel's assistance at sentencing.

## V. Ineffective Assistance on Appeal.

Petitioner contends that counsel was ineffective on appeal in failing to consult petitioner prior to submitting the appellate brief and in failing to request to expand the record to include alibi evidence. The United States Court of Appeals for the Eighth Circuit has instructed:

> Under *Strickland,* in evaluating whether an attorney provided objectively unreasonable assistance, a reviewing court should minimize the effects of hindsight and recognize a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Because of this presumption and the reality that effective appellate advocacy often entails screening out weaker issues, the Sixth Amendment does not require that appellate counsel raise every colorable or non-frivolous issue on appeal. "Absent contrary evidence," we assume that appellate counsel's failure to raise a claim was an exercise of "sound appellate strategy."

Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998) (internal citations omitted).

Petitioner has not alleged any colorable issue that counsel should have raised that was not raised on direct appeal. Any failure to consult with petitioner could not have been prejudicial absent the failure to raise an issue having some merit.

There is no basis to request that the appeal record be expanded to include evidence not presented at trial. Petitioner waived the presentation of his alibi defense by resting without putting on any evidence. Counsel was not ineffective by failing to apprise the Court of Appeals of his claimed alibi defense.

Petitioner has not shown that counsel was ineffective on appeal or that petitioner suffered any prejudice by counsel's performance on appeal.

## VI. Evidentiary Hearing.

The district court must hold an evidentiary hearing on a § 2255 motion which presents factual issues. United States v. Lambros, 614 F.2d 179, 181 (8th Cir. 1980). However, a § 2255 "petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record,

inherently incredible or conclusions rather than statements of fact." Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998) (*quoting* Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)). No evidentiary hearing is necessary because it plainly appears from the face of the motion, after extensive review of the record, that the petitioner is not entitled to relief on any issues. Summary dismissal is therefore appropriate pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

## ORDER

IT IS ORDERED that respondent's motion to dismiss for failure to state a claim, Doc. 21, is granted as to all claims of ineffective assistance of counsel.

DATED this 19th day of December, 2018.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge